UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\*\*\*

| | |
|---|---|
| ALEXIS GURSHIN, an individual, | Case No. 2:15–cv–323–GMN–VCF |
| Plaintiff, | |
| vs. | **ORDER** |
| BANK OF AMERICA, NATIONAL ASSOCIATION; DOES I through X, and ROE BUSINESS ENTITIES I through X, inclusive, | MOTION TO ORDER PLAINTIFF ALEXIS GURSHIN TO SUBMIT TO A MENTAL EXAMINATION (DOC. #39) |
| Defendants. | |

This matter involves Plaintiff Alexis Gurshin's gender discrimination and retaliation action against Bank of America. Before the court is Bank of America's Motion to Order Plaintiff Alexis Gurshin to Submit to a Mental Examination (Doc. #39), Gurshin's response (Doc. #42), and Bank of America's reply (Doc. #43). A hearing on the instant motion was held on January 26, 2016. For the reasons stated below, Bank of America's motion is granted.

**I. BACKGROUND**

The instant dispute arises from Bank of America's desire to conduct a mental examination of Gurshin. Gurshin alleges that Bank of America discriminated against her based on her gender and retaliated against her in violation of Title VII of the Civil Rights Act of 1964. (Doc. #1). Gurshin seeks, among other relief, compensatory damages "in an amount to be determined at trial." *Id*. Gurshin testified, during her deposition, that she tried to commit suicide twice. (Doc. #39-1 at 16-17, 36-37). Gurshin also testified that one reason, among others, she decided to commit suicide was her work environment at Bank of America. (Doc. #39-1 at 16-17). Gurshin also acknowledged that she has sought mental health treatment since she was 15 years old. *Id*. at 11.

1

After Gurshin's deposition, Bank of America asked Gurshin to stipulate to a mental examination pursuant to Federal Rule of Civil Procedure 35. (Doc. #39 at 6). Bank of America and Gurshin communicated for approximately two months regarding a stipulation for Gurshin to undergo a mental examination. *Id*. at 6-9. The parties failed to reach an agreement and Bank of America brought the instant motion. *Id*. at 9.

## II. LEGAL STANDARD

The court "may order a party whose mental or physical condition—including blood group— is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner." FED. R. CIV. P. 35(a)(1). "The order [for physical or mental examination]: may be made only on motion for good cause and on notice to all parties and the person to be examined." FED. R. CIV. P. 35(a)(2)(A). "The decision whether to order a Rule 35 examination is discretionary even when the 'good cause' and 'in controversy' requirements are met. *Adele v. Dunn*, No. 2:12-cv-597-LDG-PAL, 2012 WL 5944705 at* 2 (D. Nev. Nov. 26, 2012) (citing *Schlagenhauf v. Holder*, 379 U.S. 104 (1964)).

"Few court have held that a claim for emotional distress, alone, is sufficient to put plaintiff's mental condition 'in controversy' within the meaning of Rule 35(a)." *Turner v. Imperial Stores*, 161 F.R.D. 89, 92 (S.D. Cal. 1995). "[C]ourts will order plaintiff to undergo medical examinations where the cases involve, in addition to a claim of emotion distress, one or more of the following: 1) a cause of action for intentional or negligent infliction of emotion distress; 2) an allegation of a specific mental or psychiatric injury or disorder; 3) a claim of unusually severe emotional distress; 4) plaintiff's offer of expert testimony to support a claim of emotional distress; and/or 5) plaintiff's concession that his or her mental condition is 'in controversy' within the meaning of Rule 35(a)." *Id*. at 95.

2

Satisfaction of one of the *Turner* factors is sufficient to place a party's mental condition "in controversy." *Gavin v. Hilton Worldwide, Inc.*, 291 F.R.D. 161, 165 (N.D. Cal. 2013). Hospitalization and attempted suicide are manifestations of unusually severe emotional distress. *See id.* at 164.

"'Good cause' for a mental examination requires a showing that the examination could adduce specific facts relevant to the cause of action and necessary to the defendant's case." *Ragge v. MCA/Universal Studios*, 165 F.R.D. 605, 609 (C.D. Cal. 1995). "Factors considered in assessing whether 'good cause' exists include, but are not limited to: (1) 'the possibility of obtaining desired information by other means;' (2) 'whether plaintiff plans to prove her claim through testimony of expert witnesses;' (3) whether the desired materials are relevant;' and (4) 'whether plaintiff is claiming ongoing emotional distress.'" *Nguyen v. Qualcomm Inc.*, No. 09-1925-MMA (WVG), 2013 WL 3353840 at* 3 (S.D. Cal. July 3, 2013).

"The order [for physical or mental examination]: must specify the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform the examination." FED. R. CIV. P. 35(a)(2)(B).

"While Defendant is entitled to a Rule 35 examination of the Plaintiff, [the] court retains considerable discretion to establish manner, conditions and scope of the examination." *Simpson v. Univ. of Colorado*, 220 F.R.D. 354, 363 (D. Colo. 2004). "For example, the court is not bound by Defendant's section of a particular examining physician or psychologist." *Id*.

### III. DISCUSSION

The parties present three questions: (1) whether Gurshin's mental condition is "in controversy," (2) whether "good cause" exists to order Gurshin to undergo a Rule 35 mental examination, and (3) what is the appropriate scope of Gurshin's mental examination.

/// /// ///

3

### 1.     **<u>Gurshin's Mental Condition Is "In Controversy"</u>**

Bank of America contends that Gurshin placed her mental condition "in controversy" because Gurshin claims damages for unusually severe emotional distress. (Doc. #39 at 10-11). Gurshin counters that her mental condition is not "in controversy" because Gurshin has not alleged a separate claim for emotional distress and her emotional distress is not ongoing. (Doc. #42 at 6-7). The court finds that Gurshin's mental condition is "in controversy' because her emotional distress is unusually severe.

Gurshin, in her deposition, testified that she tried to commit suicide twice, once in February 2012 and again in August 2012. (Doc. #39-1 at 16-17, 36-37). Gurshin also testified that one reason, among others, for her February suicide attempt was that Gurshin was "fearful to go back to work." (Doc. #39 at 17). Gurshin also testified that she tried to commit suicide in August 2012 because "I didn't know if I still had a job [at Bank of America]." (Doc. #39 at 36). Gurshin's two suicide attempts manifest the unusually severe emotional distress that places Gurshin's mental condition "in controversy."

Gurshin relies on *Painter v. Atwood*, to argue that her mental condition is not "in controversy" because Gurshin has not pled a separate claim for emotional distress. Case No. 2:12-cv-1215-JCM-RJJ, 2013 WL 5428059 (D. Nev. Sept. 26, 2013). Gurshin did not plead a separate claim for emotional distress, but this does not take Gurshin's mental condition out of controversy. Gurshin's two suicide attempts render her emotional distress unusually severe and places Gurshin's mental condition "in controversy."

Gurshin next relies on *E.E.O.C. v. Consol. Resorts*, to argue that her emotional distress is not unusually severe because Gurshin's emotional distress is no longer ongoing. Case No. 2:06-cv-1104-LDG-GWF, 2008 WL 942289 (D. Nev. April 7, 2008). Gurshin contends that "her emotional distress has now dissipated three and a half year later." (Doc. #42 at 11). Even if Gurshin's emotional distress has dissipated, Gurshin's mental condition is still "in controversy." In *Consol. Resorts*, the court

determined that the plaintiff's "headaches, nausea and insomnia" were not unusually severe given that the plaintiff declared that she no longer suffered from her emotional distress symptoms. *Id*. at 8. Gursin's reliance on *Consol. Resorts* is misplaced. Gurshin's two suicide attempts are sufficient to render the emotional distress she experienced unusually severe and place her mental condition "in controversy."

### 2. **Bank of America Showed "Good Cause" to Require Gurshin to Undergo a Mental Examination**

Bank of America contends that it has "good cause" for Gurshin's mental examination because the examination will allow Bank of America to "test and defend against her claim [for emotional distress damages]." (Doc. #43 at 8). Gurshin argues that "good cause" does not exist because any information Bank of America would obtain from a mental examination, Bank of America can obtain from Gurshin's medical records. The court finds "good cause" exists for Gurshin's mental examination.

Gurshin testified that, for at least one of her suicide attempts, a number of factors were relevant in her decision to end her life. (Doc. #39-1 at 16-17). While Gurshin's medical records have been produced, they will not support the same qualitative analysis of the various factors that contributed to Gurshin's suicide attempts as may be available through a medical examination. Gurshin failed to point to specific medical records that would address their causation issues. Gurshin instead makes a general assertion that Gurshin's medical records will provide Bank of America with adequate information about Gurshin's medical condition. (Doc. #42 at 14-15). "Good cause" exists because Gurshin's mental examination will allow Bank of America to adduce relevant information about Gurshin's mental condition that Bank of America would be unable to obtain from Gurshin's medical records.

/// /// ///

/// /// ///

**3.      The Scope of Gurshin's Mental Examination is Limited in Length**

Bank of America selected Dr. Lewis M. Etcoff as its examiner and made the following proposals regarding Gurshin's examination: (1) written personality tests, estimated to last two to three hours, and (2) an interview with Dr. Etcoff, estimated to last three to five hours.  Gurshin argues that Bank of America's proposed mental examination is invasive and proposes that: (1) the mental examination be limited to appropriate topics, (2) the entire examination take no more than two hours, (3) the examination take place on a Saturday, (4) the examination be recorded, and (5) the examination be conducted by Gurshin's examiner.  The court is sensitive to the invasive nature of a mental examination and limits Gurshin's mental examination to a total of five hours.

a. *Dr. Etcoff's Examination Procedure is Adequate*

This court has already determined that Dr. Etcoff's mental examination procedure is adequate. *Painter*, 2013 WL 5428059.  Gurshin fails to explain why Dr. Etcoff is inadequate other than an assertion that Dr. Etcoff's examination procedure is not "forensic."  The court finds no reason to deviate from *Painter* and holds that Dr. Etcoff's examination procedure is adequate.  If Gurshin believes her proposed examiner will give a more accurate portrayal of Gurshin's mental condition, Gurshin is free to submit an expert report by an examiner of her choosing by the expert disclosure deadline.

b. *Dr. Etcoff's Examination is Limited to a Total of Five Hours*

Gurshin expresses concern that Dr. Etcoff's examination will be invasive and include her entire mental health, personal, and employment history.  (Doc. #42 at 17).  Dr. Etcoff, as an experienced mental examiner, will have discretion about what topics to inquire on during Gurshin's examination.  Five hours of examination is adequate for Dr. Etcoff to administer any written tests he feels are necessary as well as focus Gurshin's interview on topics and time periods relevant to Bank of America's defense.

### c. *Gurshin's Mental Examination Will Be Recorded*

"Three general reasons may argue [in favor of] the presence of a third person or recording device at a FED. R. CIV. P. 35(a) examination: (1) fear that the examiner, as a person retained by an opponent, will improperly conduct the examination to obtain admissions or other damaging concessions from the examinee; (2) fear that the examiner will utilize improper, unconventional, or harmful examination techniques; and (3) a need for emotional support or comfort during the examination." *Hertenstein v. Kimberly Home Health Care, Inc.*, 189 F.R.D. 620, 630 (D. Kansas 1999).

Gurshin wishes to record the audio of her mental examination by Dr. Etcoff in order to create an impartial record of her examination. Bank of America does not oppose audio recording of Gurshin's examination so long as counsel for the parties are not present at the examination. In light of Bank of America's amenability to an audio recording of Gurshin's examination, the court finds that Gurshin has established a valid reason to permit the audio recording of her mental examination.

ACCORDINGLY, and for good cause shown,

IT IS ORDERED that Bank of America's Motion to Order Plaintiff Alexis Gurshin to Submit to a Mental Examination (Doc. #39) is GRANTED.

IT IS FURTHER ORDERED that Gurshin's mental examination will be conducted on or before February 26, 2016 at Dr. Etcoff's office located at 8475 S. Eastern Ave., Suite 205, Las Vegas, NV 89123. Gurshin's examination will take place between the hours or 9:00 a.m. and 4:30 p.m.

IT IS FURTHER ORDERED that Gurshin's mental examination is limited to a total of five (5) hours. In the morning, two and one half (2.5) hours will be devoted to written examinations. The written examinations will be followed by at least a one (1) hour break. In the afternoon, two and one half (2.5) hours will be devoted to oral interviews. After one and one quarter (1.25) hours of oral interviews, Gurshin will be given at least a thirty (30) minute break.

IT IS FURTHER ORDERED that Dr. Etcoff make an audio recording of Gurshin's entire examination and provide each party with a copy at the conclusion of his examination. Counsel for both parties are prohibited from attending Gurshin's examination.

IT IS SO ORDERED.

DATED this 26th day of January, 2016.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE