**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| ALEXIS GURSHIN, | ) |
| | ) |
| Plaintiff, | ) Case No.: 2:15-cv-00323-GMN-VCF |
| vs. | ) |
| | ) **ORDER** |
| BANK OF AMERICA, N.A., | ) |
| | ) |
| Defendant. | ) |
| | ) |

Pending before the Court is the Motion for Summary Judgment, (ECF No. 143), filed by Defendant Bank of America, N.A. ("Defendant"). Plaintiff Alexis Gurshin ("Plaintiff") filed a Response, (ECF No. 178), and Defendant filed a Reply, (ECF No. 194). Also before the Court is Plaintiff's Motion for Summary Judgment, (ECF No. 158).[1] Defendant filed a Response, (ECF No. 164), and Plaintiff filed a Reply, (ECF No. 186). For the reasons set forth herein, the Court **GRANTS** Defendant's Motion and **DENIES** Plaintiff's Motion.

**I.     BACKGROUND**

This case centers upon hostile work environment and retaliation claims by Plaintiff against her former employer. (*See* Compl, Ex. 1 to Pet. Removal, ECF No. 1-1). Plaintiff started working for Defendant as a bank teller in 2006. (*Id.* ¶¶ 15, 20). In October 2009, Plaintiff transferred to Defendant's Plaza Banking Center in downtown Las Vegas, NV. (*Id.* ¶ 16). In February 2010, Plaintiff began reporting to Mr. Jarrett Wu ("Mr. Wu"), who was the

---

[1] Plaintiff's Response, (ECF No. 178), and Motion for Summary Judgment, (ECF No. 158), violate the Local Rules concerning page limits. Plaintiff filed two Motions for Leave to File Excess Pages; however, as they were not granted prior to Plaintiff's filing deadlines, Plaintiff's requests for excess pages are summarily denied. *See* D. Nev. Local R. 7-3. In the interest of judicial efficiency and adjudication on the merits, however, the Court waives the page limit with respect to just Plaintiff's Response, (ECF No. 178), and considers only the argument section contained therein.

1  Banking Center Manager. (*Id.*). In November 2010, Mr. Wu promoted Plaintiff to the position
2  of Sales & Service Specialist. (*Id.* ¶ 20).

3  Shortly thereafter, Plaintiff claims that Mr. Wu started engaging in inappropriate
4  conduct towards Plaintiff. (*Id.* ¶ 19). Specifically, Plaintiff asserts that Mr. Wu rubbed her
5  shoulders "[m]aybe 10, 15 times" over a six-month period, commented approximately 20 times
6  about going to topless bars, and on one occasion, made a comment that she should work in the
7  lobby area to "get more guys to open up credit cards." (*See* Gurshin Depo. 127:8–143:6, Ex. B
8  to Def.'s MSJ, ECF No. 143-3). Plaintiff claims the shoulder rubbing would last "[a]nywhere
9  from 30 seconds to maybe a minute," and was often accompanied by Mr. Wu telling Plaintiff
10 that she was doing a good job with respect to her work. (*See id.* 138:2–7; 145:10–3).
11 Additionally, Plaintiff asserts that Mr. Wu's comments regarding topless bars typically
12 happened on Mondays, as Mr. Wu would describe to Plaintiff what he had done over the
13 weekend. (*See id.* 131:22–132:3; 132:25–133:7). During these conversations, Plaintiff states
14 that Mr. Wu would talk about how the bars were "strange" or "cool" or mention that he saw
15 "boobs." (*See id.*). Plaintiff admits that she never told Mr. Wu to stop, but states that she feared
16 him "retaliating" or "being angry" because he was her manager. (*See id.* 136:1–2). Further,
17 Plaintiff concedes that she did not tell anyone about Mr. Wu's conduct at the time it was
18 happening. (*See id.* 144:8–19).

19 On February 1, 2012, Mr. Wu issued Plaintiff a written warning for being tardy multiple
20 times in the preceding two months. (Warning, Ex. C to Def.'s MSJ, ECF No. 143-4). The
21 warning was issued pursuant to the Bank's attendance policy, which required a warning if an
22 employee was tardy more than five times in a 12-month period. (Duffield Decl. ¶ 7, Ex. F to
23 Def.'s MSJ, ECF No. 143-7). Plaintiff does not dispute her tardiness. (*See* Gurshin Depo.
24 559:16–560:8, Ex. B to Def.'s MSJ).

25

On February 6, 2012, Plaintiff took a leave of absence after being hospitalized for an attempted suicide. (*See id.* 54:16–21) (Absence Letter, Ex. N to Def.'s MSJ, ECF No. 143-15). Plaintiff returned to work on February 21, 2012. (*See* Compl ¶ 29, Ex. 1 to Pet. Removal). Upon her return, Plaintiff spoke with the assistant manager, Devan Thorns ("Thorns"), and mentioned to Thorns that Mr. Wu had been "inappropriate" in the past but did not go into any greater detail. (*See* Gurshin Depo. 187:22–189:2, Ex. B to Def.'s MSJ). That same day, Plaintiff left work and commenced a second leave of absence. (Leave Notice, Ex. O to Def.'s MSJ, ECF No. 143-16).

On April 11, 2012, while on leave, Plaintiff called Defendant's "Advice and Counsel Department," which was Defendant's human resource hotline for reporting harassment. (*See* Gurshin Depo. 161:18–163:7, Ex. B to Def.'s MSJ); (Harassment Policy, Ex. K to Def.'s MSJ, ECF No. 143-12). On the call, Plaintiff reported Mr. Wu's various instances of alleged harassment. (*Id.* 362:23–372:17). Two days later, Sheri Madrid ("Madrid")—the investigator assigned to Plaintiff's case—initiated contact with Plaintiff. (Madrid Decl. ¶ 6, Ex. S to Def.'s MSJ, ECF No. 143-20). Shortly thereafter, Madrid conducted interviews of Plaintiff, Mr. Wu, and a number of other employees. (*Id.* ¶ 9). Ultimately, based on Madrid's investigation results, supervisor Greg Duffield ("Duffield") states that he issued a "strong verbal warning" to Mr. Wu and warned him that further inappropriate conduct could result in termination. (Duffield Decl. ¶ 9, Ex. F to Def.'s MSJ). Further, Duffield states that he required Mr. Wu to complete a web-based workplace behavior training course. (*Id.*).

On May 3, 2012, Madrid advised Plaintiff that Defendant had taken corrective action against Mr. Wu, and that she would not be subjected to retaliation or other inappropriate conduct upon returning to work. (*See* Gurshin Depo. 290:8–18, Ex. B to Def.'s MSJ); (Madrid Decl. ¶ 12, Ex. S to Def.'s MSJ). On July 11, 2012, Defendant terminated Mr. Wu's employment for performance reasons. (Duffield Decl. ¶ 11, Ex. F to Def.'s MSJ). On July 26,

2012, having not heard from Plaintiff since the expiration of her leave of absence a few days prior, Duffield sent Plaintiff a letter stating that failure to return to work by August 5, 2012, or else provide a reason for continued absence, would constitute her resignation. (Duffield Decl. ¶ 12, Ex. F to Def.'s MSJ). Thereafter, Plaintiff extended her leave several additional times. (Letters, Ex. Q to Def.'s MSJ, ECF No. 143-18). On October 5, 2012, Plaintiff sent a resignation email to Duffield, stating "[t]here has been little progress for me to feel safe to return to work" and that she found different employment. (Resignation, Ex. I to Def.'s MSJ, ECF No. 143-10).

On October 28, 2014, Plaintiff filed a complaint in state court, alleging claims for hostile work environment and retaliation against Defendant. (*See* Compl, Ex. 1 to Pet. Removal). On February 24, 2015, Defendant removed the action to this Court. (Pet. Removal, ECF No. 1). Both parties now seek summary judgment on all issues raised in this case. (ECF Nos. 143, 158).

## II.  LEGAL STANDARD

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)). A

principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go

beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

### III. DISCUSSION

#### A. Plaintiff's Motion to Exclude Evidence

As a preliminary matter, the Court addresses Plaintiff's Motion to Exclude Evidence with respect to the declarations of Duffield, Madrid, and Miller. (ECF No. 173). While Plaintiff styles the motion as an objection to the admissibility of the evidence, Plaintiff actually seeks exclusion as a sanction pursuant to Federal Rule of Civil Procedure 37. Specifically, Plaintiff seeks sanctions because the at-issue witnesses allegedly testified outside the scope of Defendant's initial disclosures. (*See id.* 1:3–6:20).

Under Rule 37, a Court may exclude evidence that a party seeks to offer but has failed to properly disclose. Fed. R. Civ. P. 37(c)(1). Such a sanction is unwarranted, however, if the failure was substantially justified or harmless. *Id.* In determining whether the failure was substantially justified or harmless, a court considers: (1) the surprise to the party against whom the evidence would be offered; (2) the ability of the party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the non-disclosing party's explanation for its failure to disclose the evidence. *Mullally v. Jones*, No. 2:05–cv–00154–GMN, 2010 WL 3359333, at *2 (D. Nev. Aug. 20, 2010).

Upon review of the record, the Court finds that exclusion of the evidence is not appropriate in this case. Notably, the at-issue declarations do not fall outside the scope of

Defendant's initial and supplemental disclosures such that blanket exclusion is warranted. Moreover, even to the extent certain portions exceed the scope, the Court does not find that Plaintiff could have been harmed or surprised by this testimony. To the contrary, a review of the record shows that Plaintiff had knowledge, or else should have had knowledge, of the facts set forth in the declarations, and Plaintiff had ample opportunity to depose the witnesses regarding these facts. Accordingly, and based on a review of the relevant factors, the Court declines to exercise its discretion to issue discovery sanctions. *See Professional Seminar Consultants, Inc. v. Sino Am. Technology Exch. Council, Inc.,* 727 F.2d 1470, 1472 (9th Cir.1984).

### B. Defendant's Motion for Summary Judgment

#### 1. Hostile Work Environment

In its Motion, Defendant argues that it is entitled to summary judgment on Plaintiff's hostile work environment claim based on the *Ellerth/Faragher* affirmative defense. (Def.'s MSJ 13:17–22, ECF No 143). Under this defense, an employer is entitled to summary judgment if it can show by a preponderance of the evidence "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer." *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 765 (1998). "No affirmative defense is available, however, when the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment." *Id.*

*a) tangible employment action*

Defendant argues that it did not take any tangible employment action against Plaintiff. (Def.'s MSJ 14:6–22). The Court agrees. Here, up until her voluntary resignation, Plaintiff remained on a self-imposed leave of absence for eight months. During this time, Defendant

remained in contact with Plaintiff regarding her return to work. While Defendant did send Plaintiff a letter on July 26, 2012, requiring her to either return to work or provide justification for an extension to her leave, Defendant only sent this letter after Plaintiff's permitted term of leave had expired. (Duffield Decl. ¶ 12, Ex. F to Def.'s MSJ). Moreover, no action was ultimately taken against Plaintiff, as she extended her leave multiple times after receiving this letter. (Letters, Ex. Q to Def.'s MSJ). Plaintiff's decision to remain on leave up until her voluntary resignation does not give rise to a tangible employment action against her.

Notwithstanding the above, Plaintiff argues that she suffered a tangible employment action because Defendant took steps to replace her while she was on leave and failed to inform her of her job-protection rights. (*See* Pl.'s Resp. 28:13–16, ECF No. 178). Both Plaintiff's arguments are expressly contradicted by the record. First, regardless of the steps Defendant purportedly took to cover for Plaintiff's position while she was absent, Defendant informed Plaintiff that she could return to work at her old position. (*See* Gurshin Depo. 290:8–18, Ex. B to Def.'s MSJ); (Madrid Decl. ¶ 12, Ex. S to Def.'s MSJ). Second, the record contains multiple letters from Aetna informing Plaintiff of her job-protection rights under the Family and Medical Leave Act. (*See* Exs. N, O, Q to Def.'s MSJ). Based on the evidence, no reasonable trier of fact could find that Plaintiff suffered a tangible employment action against her.

### b) reasonable care to prevent and correct harassing behavior

Under the reasonable care prong, an employer must show that it acted both to prevent *and* promptly correct the harassment. *Nichols v. Azteca Restaurant Enterprises, Inc.,* 256 F.3d 864, 877 (9th Cir. 2001). An employer may generally satisfy its burden with sufficient proof that it "promulgated an anti-harassment policy with complaint procedure." *Ellerth,* 524 U.S. at 765; *see also Holly D. v. California Institute of Technology,* 339 F.3d 1158, 1177–78 (2002) (finding a "promulgated a written policy which defined prohibited behavior, identified contact personnel, and established procedures to

investigate and resolve any claims" sufficient for an employer to satisfy the first element of a reasonable care defense).

Here, the record shows that Defendant maintained policies prohibiting harassment, discrimination, and retaliation during the period in question. (*See* Policy, Ex. K to Def.'s MSJ, ECF No. 143-12). The policy handbook laid out procedures for reporting harassment, including reporting the conduct to a manger or contacting the Advice and Counsel line. (*Id.*). Plaintiff acknowledges that she received this policy handbook when she began working with Defendant and recalls receiving additional handbooks in the subsequent years of her employment. (*See* Gurshin Depo. 208:17–24, Ex. B to Def.'s MSJ). Furthermore, Plaintiff admits that she knew the procedure for reporting harassment at all times during her employment. (*See id.* 297:18–21).

The Ninth Circuit has observed that "[t]he most significant immediate measure an employer can take in response to a sexual harassment complaint is to launch a prompt investigation to determine whether the complaint is justified." *Swenson v. Potter,* 271 F.3d 1184, 1193 (9th Cir.2001). Here, Defendant launched an investigation into Plaintiff's allegations just two days after she initiated her complaint to Advice and Counsel. (Madrid Decl. ¶ 6, Ex. S to Def.'s MSJ). Nonetheless, Plaintiff argues that Defendant's response was not prompt because Plaintiff first reported the harassment in February 2012 to Thorns. This argument fails for multiple reasons.

First, Thorns was not a management level employee within the meaning of Title VII and therefore her knowledge does not impute to the employer for purposes of vicarious liability. *See Sloan v. Eugene Burger Corp.*, No. 3:12–cv–00336-MMD, 2014 WL 794222, at *3 (D. Nev. Feb. 26, 2014); (Duffield Decl. ¶ 5, Ex. F to Def.'s MSJ). Second, Plaintiff only made vague remarks to Thorns about Mr. Wu being "inappropriate" and did not elaborate in any greater detail. *See Hardage v. CBS Broad., Inc.*, 427 F.3d 1177, 1187 (9th Cir. 2005) (stating that

undetailed allegations are "merely colorable" and "insignificantly probative" to create a genuine factual dispute). Third, even to the extent Plaintiff's vague comment to Thorns were sufficient to trigger a duty, Thorns complied with Defendant's harassment policy by referring Plaintiff to the Advice and Counsel line. (*See* Gurshin Depo. 187:22–189:2, Ex. B to Def.'s MSJ). Defendant therefore acted promptly after Plaintiff reported the harassment.

Upon learning of the sexually harassing conduct, an employer must take corrective action that is "reasonably calculated to end the harassment." *Nichols,* 256 F.3d at 875. Here, the Court finds that Defendant met this standard by conducting its prompt investigation and issuing corrective action against Mr. Wu. After Plaintiff reported the allegations, Defendant conducted interviews of Plaintiff, Mr. Wu, and several other employees at the bank. Thereafter, Defendant issued a verbal warning to Mr. Wu and explicitly informed him that any further inappropriate conduct could lead to termination. (Duffield Decl. ¶ 9, Ex. F to Def.'s MSJ). Defendant also required Mr. Wu to complete an online behavior training course. (*Id.*).

Plaintiff largely challenges the adequacy of Defendant's investigation on procedural grounds. (Pl.'s Resp 30:20–33:13). For instance, Plaintiff argues that conducting the interviews over the phone was inadequate because the investigator could not properly evaluate credibility. (*See id.*). Where an employer takes prompt steps to stop the harassment, however, liability cannot be premised on perceived inadequacies in the investigation. *Swenson*, 271 F.3d at 1198. Beyond conclusory assertions, Plaintiff fails to provide evidence indicating that Defendant's corrective action was inadequate. To the contrary, Plaintiff did not suffer from any further alleged harassment after Mr. Wu was reprimanded, despite having some communication with him. In light of the evidence on the record, the Court finds that Defendant meets the reasonable care prong as a matter of law.

*c) failure to take advantage of preventative/corrective opportunities*

Defendant argues that Plaintiff failed to take advantage of preventative/corrective opportunities because she did not report Mr. Wu's alleged conduct until months after it occurred and when she was already on leave. (*See* Def.'s MSJ 18:24–19:4). The Court agrees. In particular, the Court notes that Plaintiff did not report the alleged harassment when it was occurring, despite knowledge of Defendant's procedure for reporting harassment. As the uncontroverted evidence demonstrates that Plaintiff failed to take advantage of Defendant's reporting procedures, Defendant satisfies this prong of the defense. *See Ellerth*, 524 U.S. at 765. Based on the foregoing, the Court grants Defendant summary judgment on Plaintiff's hostile work environment claim.

**2. Retaliation Claim**

"To make out a prima facie case of retaliation, an employee must show that: (1) he engaged in a protected activity; (2) his employer subjected him to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action." *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000).

With respect to the second prong, a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). Under this test, trivial harms are insufficient to constitute adverse actions. *Id.*

For the reasons already discussed previously in this order, the uncontroverted evidence demonstrates that Plaintiff did not suffer from an adverse employment action. In particular, the Court notes that Plaintiff commenced leave from work, was given the opportunity to return at her old position, and explicitly was assured that she would not be subject to any retaliation or future harassment. Despite these assurances, Plaintiff never returned to work and instead

voluntarily resigned from her employment. In her Response, Plaintiff raises over a dozen allegedly adverse actions against her, such as Defendant conducting a "shoddy and hurtful" investigation. (*See* Pl.'s Resp. 38:17–39:24). These attenuated assertions lack any merit and fail to establish a genuine issue of material fact. *White*, 548 U.S at 68. Accordingly, as Plaintiff has not demonstrated an adverse action against her, the Court grants Defendant's Motion for Summary Judgment.[2]

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment, (ECF No. 143), is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment, (ECF No. 150, 158), is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Exclude Evidence, (ECF No. 173), is **DENIED**.

**IT IS FURTHER ORDERED** that the Motions to Seal, (ECF Nos. 144, 159, 165, 181, 189), are **GRANTED** consistent with the foregoing.

**IT IS FURTHER ORDERED** that Plaintiff's Motions for Leave to File Excess Pages, (ECF Nos. 148, 174), are **DENIED**.

///

///

///

---

[2] The Court has reviewed the Motions to Seal, (ECF Nos. 144, 159, 165, 181, 189), and finds that the parties have preliminarily met their burden to file under seal in accordance with the protective order. Notably, these documents contain personal identifying information of other witnesses in sexual harassment reports, health records, and proprietary internal procedures. *See Kamakana v. City & Cty. Of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006). Nonetheless, the Court recognizes that the public interest weighs heavily in favor of unsealing, and certain portions of the parties' exhibits could properly be protected through redactions. The Court therefore grants the parties leave to meet and confer regarding whether the exhibits can be re-filed with more specific redactions, rather than sealing the whole document. The parties shall have twenty-one days from the date of this order to file any such request to the Court.

**IT IS FURTHER ORDERED** that Plaintiff's Motions for Leave to Late File, (ECF Nos. 159, 182), are **GRANTED**.

The Clerk of Court is instructed to enter judgment accordingly and close the case.

**DATED** this __30__ day of March, 2018.

_____
Gloria M. Navarro, Chief Judge
United States District Judge